Number 191658, ItyX Solutions AG v. Kodak Alaris, Inc. Good morning, Peter VanTol for the pellant Kodak Alaris, Inc. Your Honor, I'd like to reserve three minutes of rebuttal time. Yes. Thank you. Standing is a dispositive issue here, and I'd like to start there because ItyX Solutions has not carried its considerable burden of proof on that issue. It still has not presented to the Court any specific competent evidence that it had the right to bring the underlying action against my client, Kodak Alaris. In particular, ItyX Solutions has not established that it had the rights to sell the software that's at issue in this case. Instead, it is owned by a company called ItyX Technology. Didn't the district court view this mostly as a contract interpretation issue rather than a standing issue? You certainly can't say that the injury requirement of Article 3 is not involved here. It depends on the outcome of that contract question. So you're going to have to help me, but I have a very hard time seeing why standing is at all at issue here. Your Honor mentioned the injury problem of standing, which is? Let's go back to the district court. This is basically a contract question as to the extent of ItyX's rights under the various contracts. Yes, Your Honor. There's a second prong, as you know, to standing, which is the prudential prong. And that one goes to whether or not the proper party is before the court. And in Worth v. Selden, the Supreme Court... And if it's prudential, why is it any error was committed here? Because it's the improper party, Your Honor. The party that should have been suing Kodak-Elair-Singh for breach of the contract was ItyX Technology. As a matter of law, you think that under the prudential standing aspect, prudential aspect of standing, which is not usually a pure legal issue, that you have an issue on appeal that the district court committed error as a matter of law? We do, Your Honor. And the reason it's a legal question here is it derives from a contract. And on de novo review, which this court has on standing issues, just as a court could review the contract itself rather than send it to a jury, under that contract, there is no right for ItyX Solutions to sell the software. But they had the standing to claim that they had the product. Well, Your Honor, they can make whatever claim they like, but they didn't have any standing under their own documentation. In other words, there was something called the Investment Framework Agreement that identified ItyX Technology as the sole and unencumbered owner of the software. That was in 2014. They then sued in 2016 saying ItyX Solutions is the sole owner of the technology, of the software. That cannot be because ItyX Technology, another company, had those rights. So essentially, ItyX Solutions was trying to assert the legal rights of another party. And under Ward v. Selden and other cases, even if the parties are related, you cannot do that. They're trying to assert their rights as a party to the contract. I understand what they were asserting, Your Honor, but they were not actually the proper party to the contract. There's no dispute that they were a party to the contract. There is no dispute about that. So that was the capacity in which they were suing. The question is whether they are a breach of the contract or they can win under the contract. But that's not an Article III question. That's just a merits question. Before you get to that, Your Honor, though, what they said in the contract was, in the warranty of title, they said, I have authority to sell you this piece of software. But they have standing to make that argument. They could be wrong on the merits. But doesn't the fact that they're a party to the contract give them the standing to make that? It's not like they're in these other cases where somebody is not a party to the contract coming in saying, hey, I have an enforceable right here. Maybe there's a standing issue in that circumstance. But as a party to the contract, you're just disputing whether the contract condition was met or not. It is actually analogous to a few of the cases, Your Honor, because one of them was an assignment case. So what ITICS is saying in the contract was, I have been given the rights by the owner to sell you the software. But they were the party to the contract. No doubt that they were the party to the contract. Do you have any case in which a party to the contract is held to have not, doesn't have Article III standing, to assert rights it claims under the contract to which it's a party? I don't think I've seen one, Your Honor. There's one, I think it's the Warner case, might have been the case where there was an assignment of rights. I would say that is an analogous case. But what it goes to is that there is. Counsel, you can use your time any way you want, but you have limited time. And we've told you there are some doubts about your standing argument. So what else do you have to tell us? Thank you, Your Honor, for that. I will move on to the next issue, which is under the master agreement, there were damages awarded by the jury in the amount of $872,000. As the court may appreciate, the verdict form did not break it down, but counsel have agreed that 6.6 roughly was for the PS agreements, 872 was for the master agreement. The problem with that award is it is not allowed by the very verdict form that the jury filled out. In question two, it says, did the codec lawyers breach the master agreement and or the PS agreements by terminating them? The jury said no. The instructions then say. Didn't they give a date?  Didn't that verdict question give a date? It does. It says on December 18th. You just left out the date. I apologize. That was not intentional. No, I know, but including the date gives rise to the whole argument that you've got to address, which is that it's definitely a case that they concluded it was not terminated at that time, but that doesn't foreclose the possibility that the jury could have concluded it was terminated in some other way. So what's your answer to that? We submit that it does preclude such a finding, Your Honor, for the following reason. After December 18th, 2015, both parties stopped performing under the contract, so it was a termination. We say that the jury validly found it was a termination. We had this whole discussion with the district court when we came up with the verdict form, and I said to the judge, if they answer no to question two, the exit provision, which is what they awarded damages under, disappears. It has no more effect because the contract is terminated. The judge agreed. Opposing counsel agreed. That's why the form then says you skip to question four, and the jury struck through question 3A. Question 3A asks whether reentering the IDR business, whether there was a violation of the exit provision, is a breach of the master agreement. They did not answer that question, and they did so intentionally because instructions told them to skip that question. And they had to skip the question because the termination of the agreement makes the exit provision fall away. There's no need for it anymore. So there was no dispute about that at trial. In fact, the only reason we agreed to the insertion of the question about whether there was a reentry into the business was counsel said that's advisory only. Just so I follow, because I may just not be tracking it. If they had answered yes, then they could not answer question 3A. Or if they answered no, they could not answer 3A. If they answered no, which they did, they could not answer question 3A. And just remind me what question two is again. Question two is did KAI reenter the IDR business represented by the Kodak IDR product within two years of abandoning that business on December 18, 2015? So that question reflects what we call the exit provision. And what I argued to the court, and there was no disagreement from anyone, is if there is a termination, answer to question number two, then the exit provision falls away. So our view is there's no way the jury could award $872,000 once it found that there was no breach of the contract. Basic contract law, you have to have a breach in order to have damages. The same issue arises. Why couldn't the jury have viewed those as different contractual obligations, one of which was not met by a particular time as in question two, but the other of which the exit provision was violated as of that date? That is the way I read these jury verdicts. So what's wrong with the jury having done that? What's wrong with it, Your Honor, is that would be a violation of the form and the argument that we made on which the form was based. So it was incumbent upon the district court to fix that error. We were concerned about that very thing happening. I'm sorry. So your appeal really is that the jury verdict form was error? Actually, it's that the jury verdict form was correct, Your Honor, but that the jury's award of damages is contradictory to the form. No, no, not on my theory. You want to rule out of the case the theory I just articulated, which allows the jury to answer both no on question two and yes on question three, and I'm asking what the basis for that argument is. The basis for that argument is, Your Honor, that it was known and agreed by all parties when we entered into the jury verdict form that a natural consequence of termination is the exit provision falls away. Was that known to the jury? I don't think it was, Your Honor. How can we read, just given the text of the verdict form, how can we conclude that the jury would necessarily have been sharing the assumption that you all had in constructing the jury verdict? I don't think we need to get there, Your Honor, and that's the point. In other words, the jury did what the jury did, and they followed the form. Our point is it was incumbent upon the jury. But that goes to Judge Lynch's point to you, which is that you're now not contesting the inconsistency of the verdict because you're conceding that the verdict form is not on its face so clear that the jury has to be understood to have been acting inconsistently. You're contesting the verdict form itself and saying the district court should have made it clear. Or, Your Honor, to state it in another way, what we're saying is once the damages came back and we make our Rule 50 motion, the judge should have said this jury tried to do their best, but after they answered the questions correctly, they should not have awarded damages. So why not? Because you can't answer Question 3A skipping it, but now you're objecting Judge Lynch's construction of the verdict as a textual matter. I don't think that there's a difference. I just heard you, I thought, drawing a distinction between an argument that basically you should have objected to the verdict form, but I take it you didn't, you agreed to it. You then are making a separate argument under Rule 50A that it suddenly became apparent to you that the jury might have misread the intention of the form. And at that time, the district court was required to have taken away the verdict. Why was the district court required to have done that? Because the district court put this jury verdict form before the jury with our understanding, the court's understanding, and opposing counsel's understanding that a natural consequence of saying no may not have been there. Well, I doubt your opposing counsel is going to agree with that, and I doubt there's anything in the record that actually supports that the form is what it is. And there is no instruction that if you answer Question 2 with a no, you may not answer Question 3, which I take it is now your position. Well, it does, if I can respond quickly to both of those, Your Honor, we had a colloquy with the court, and it's at A5223-30, where we had exactly this discussion. So it was understood what the form meant. And to your second point, the form does say in Question 3, if your answers to Question 2 or 3 are both yes, proceed to Question 3A. Yeah, so what does that have to do with the relationship between 2 and 3? It means that if you have found that there's a valid termination, then the exit provision falls away. You're just ignoring the date? It's in 2. I don't follow that, Your Honor. I don't think so, because they were coterminous. So if we say it a better way, if we terminate on December 18, 2015, and it's valid, it then doesn't matter whether or not Codex Valeris enters the market or not, because the exit provision is the only thing that kept it out of the market. It falls away on the date of the termination, in other words. Did you comply with the procedural requirements under Rule 50A? We did, Your Honor. To preserve and make such a motion? We did, Your Honor, yes. I see my time is up, so I thank you. Good morning. May it please the Court, Jonathan Green for Plaintiff Appellee ITIC Solutions. I just want to discuss standing for one moment. I don't want to beat a dead horse, but the question on standing is, did the district court err in summary judgment? That's where it comes up, on summary judgment, on a Rule 56 motion. And what the Court said is, it's not standing, but even if it is, there are disputed issues of material fact here that are intertwined with the merits that I can't possibly decide, so it has to go to the merits, not the standing. The merit determination as to the license rights has to go to the jury. In preparing for argument today, I came across some cases that are precisely on point. We didn't address it in our brief, because our view is it's not a standing argument. But it's irrelevant. The outcome would have been the same. The district court did not err whether it was standing or not at summary judgment, because there were disputed issues of material fact as to the issue of license rights that had to go to the jury, and they did. There is also another argument, which is the rulings on Rule 56 disappear once an issue is submitted to a jury. So can we move on? We will. Now, as to the substantive license rights, there is substantial evidence in the record. It's referred to in our brief. I can give the cites again, but there was substantial evidence as to the fact that ITICS Solutions at all times, and to this day, in fact, had all license rights warranted under the master agreement. At all times, it's always had them. There was evidence by Mr. Arion, who is the person who signed the agreements. There were six license agreements entered into in the record. I may be misunderstanding, but could you get to the question two and question three issues? Yes, I will do that now. As to that, the question is, this question was put to Judge Burroughs in the post-trial motions. Judge Burroughs rejected. Judge Burroughs, who oversaw this trial, who helped to draft these questions, she rewrote question two on the verdict form, and this very issue was put to Judge Burroughs in the post-trial motions, and she categorically rejected this view, this reading of the verdict, which makes what the jury did complete nonsense. You cannot square what KAI is claiming the jury did in question two with the rest of the verdict. Could you address the prior question, though, which is, what is the understanding of the parties about these questions such that prior to the Rule 58 motion, their contention is that everybody understood this verdict form one way. When the jury came back on that understanding, even if it turns out on reflection the text doesn't reflect it, this verdict would have been nonsense, just as you said. The answer to that is, well, no, the text of it doesn't make it nonsense. But their response to that is, but on our understanding of what verdict form we were agreeing to, including the district court's understanding of it, it was not susceptible of this interpretation. Therefore, that should be corrected now post-trial. What is the answer to that? The answer is, no, that wasn't the nature. There was colloquy, and it was about the relation of two, three, and three A, but it has always been our position throughout the case, and Judge Burroughs agreed with us post-trial, and it's a question of whether she abused her discretion in doing that, and she didn't. Question two asks, did KAI breach the master agreement and or the PS agreements by terminating them on December 18, 2015? And KAI always leaves out the on December 18, as Your Honor correctly pointed out. That's a key question, because remember what happened on December 18. A letter was sent by KAI's counsel that purported, in the first part of the letter, to terminate the contracts citing a breach of fiduciary duty by another entity in Germany. That's part one of the letter. KAI lost on that breach of fiduciary duty claim. It's one of their counterclaims. They lost on that, and they haven't appealed it, so they have waived issue number one, which is we're trying to terminate on December 18 by this letter citing the breach of fiduciary duty. They lost on that. They haven't appealed. It's waived. It's gone. The only part that's left is part two of the letter, and in part two of the letter, what it says is, if our efforts to terminate are unsuccessful, we hereby exercise our rights under the master agreement, acknowledging that it continues, to exit the business. So you have to look at what happens on December 18 to understand what that question is going at, and the more I look at what the jury did here, the more impressed I am with the nuance that they understood. They got this. So they reject part one. They say there has been no termination because there's been no breach of fiduciary duty, and then they look at part two, and they said, okay, you said you were exiting the business on December 18. You seemed to, so on that date, December 18, there is no termination, and you said you're exiting the business, and as of that date you appear to, there's no breach. So they answer, no. Let's move on, and then they say, well, what happened after December 18? After December 18, two things happened. Under the master agreement, the evidence came in on trial, that KAI, in fact, reentered the business within the two years prohibited by the exit provision. That is a breach. Okay, that is a breach. Question three, definitionally, is a breach, and the jury clearly understood that because they went on to award damages for a breach of the master agreement for reentering the market. So I've just, I'm old-fashioned. I was about to say pulled up. I don't have my iPad with me. I am looking at the text copy of what Judge Burroughs ruled on the Rule 50 motion, and there is no reference to this argument being made about confusion over the jury verdict form or any agreement by the parties or anything of the like. There is a reference to an argument that because KAI asserts because the jury concluded that KAI did not breach the master agreement or the PS agreement through its December 18, 2015, communications, the jury necessarily accepted that ITICS violated the implied covenant of good faith and fair dealing. That appears to be the argument that was presented. The district court then rejects it. So I'm not even sure the argument we've been talking about was, in fact, part of the Rule 50A. It was certainly part of the motion for a new trial. It was? It was part of the JNLB motion. Okay. If it was, why wasn't it dealt with in Judge Burroughs' order? It was, and she categorically rejects this view that KAI is arguing before this court that, I mean, if you take what they're saying to a logical extreme, they won the case. No, no, no, the argument about the jury form. She rejects it. She says that's not what the jury did. Yeah, but the question is, each of you keeps switching between two arguments. There's what did the jury do and what is inconsistent. If what the jury did was inconsistent, that would be a ground for throwing out the verdict that they came to. Your answer to that is it's not inconsistent because the text can be read to make it so it's consistent. It's not inconsistent at all. Correct. We're in a perfect agreement. Your opponent says no, there's no way to read it to make the verdict consistent. If we disagree with that, you would win on that issue. Their fallback issue is, as I understand it, which I understood you to be saying you concede was made below, is notwithstanding that the verdict form could be read that way, the parties all understood with the judge's blessing that it was not intended to be read that way. And so that is error because now that we all see that the jury read it differently than we thought it would, although it's susceptible of being consistent, the judge should step in and re-institute the understanding of the verdict form that the parties who drafted it had. You don't dispute that that argument was made below, do you? No, I do. I thought I had just conceded it had been made. I apologize. What I said was there was discussion about 2, 3, and 3A collectively and what they meant. And sort of separating those out I think is a little difficult in terms of the colloquy. The Rule 50 motion, in addition to arguing that the jury verdict was inconsistent, was an argument made to the district court in the Rule 50 motion that an independent ground for reversing it was that even if the text of the verdict form would be susceptible of a reading that would render the jury's verdict consistent, nonetheless there was error because that reading of the verdict form was so at odds with the understanding of the parties as to what the verdict form was intended to mean that it should now be corrected. I mean, I can't speak for their brief. I mean, I think maybe my brother will answer that in his rebuttal. I don't think it was made with that specificity. Did you ever state to the court, the trial court, that you agreed with that interpretation from your brother at the time the jury form was being formulated? And is there anything in the record that the court, in fact, agreed with all of that? Well, clearly the parties agreed to and there is no objection to the jury, the verdict form that went to the jury. So the jury has this, not the colloquy. As to what the colloquy was and where we ended up, my recollection, it's been a while, but my recollection was there was some frustration by the court because the verdict form was being negotiated up until, as you've seen in the record, up until the morning of it. And there was a lot of back and forth. Judge Burroughs is a very good judge. She is. And if she did not, in her ruling, make any ruling or even mention that such an argument as to the, if you answer two a particular way, you can't go on to three, there is nothing in her ruling that tells us that she thought any such issue was before her. And that is correct and that was never our understanding. And it would make the jury's verdict, if in fact Kay and I is right, the jury should have stopped at two. But they're misreading question two. I mean, that is our point is they are intentionally misreading. If you understand the letter that forms this, they are misreading question two, which is why if you read it the right way, what the jury does on three, four, five, six. It doesn't matter as long as it was permissible for the jury to read it that way. There was no greater speculation. And I would submit, following up on your Honor's point about Judge Burroughs, she is an experienced, careful trial judge. She oversaw this trial. Let's not overdo it. Okay. They're here on appeal. But she, on the post-trial motions, looked at this argument and said, no, you're misreading it. And the question is, did Judge Burroughs abuse her discretion or commit clear error in making that finding? And I would submit that she didn't because it is well supported by the evidence. And, you know, there is a way to read. You're supposed to read the verdict in a way that makes sense. And she says you can read this verdict in a way that makes sense. What KAI is doing doesn't make sense because the assumption is, you know, that the jury found there was no breach and a proper termination, yet went ahead and then found that KAI had breached. Okay. And instead of repeating yourself, do you want to address anything else that's in their brief? Could you introduce, just to make sure before you sit down, you address the pre-judgment interest issue? Yes. Well, the pre-judge's interest, to be clear, the pre-judgment interest is only being challenged with respect to interest on the master agreement, not the pre-judgment interest on the PS agreement. So it's the small piece. It's the pre-judgment interest on $800,000. The jury didn't pick a date, didn't provide a date by which the breach of the master agreement occurred. So how could the date be the time of the complaint? Well, it was the first. Did anybody say the cause of action existed at the time of the complaint? The breach had occurred by the time of the complaint. I mean, the allegation was that, and the evidence introduced at trial, was that KAI set about re-entering the market even before sending the termination letter in December. On your account, is it just the re-entry that's the violation? When does the re-entry occur? Well, the actual re-entry of the market in terms of selling new product occurs in August or September 2016. And when was the complaint? The complaint is February 2016, but the evidence at trial was that KAI started talking to competitors on December 3, 2015. Is that a breach? No, but it's the beginning. I'm still stuck on the question. How can the cause of action exist until the re-entry of the market occurs, which you concede is after the complaint? It's a little complicated based on the competition question. The claim on competition sort of changed because KAI, during the pendency of the lawsuit, changed what it was doing. At the time the claim was filed for violating the exit provision, it was based upon a different product. And then the new product comes out later. But Judge Burroughs selected the date of the filing of the claim because that was the date that the claim for breach of contract based upon violation of the exit provision arose. And it is a fair date based upon the evidence which was introduced, which was that in the spring of 2016, KAI was internally well underway working towards gearing up to have a competitive product come on the market. I'm sorry, I've forgotten. There's an unfair competition claim as well as a breach of contract claim. It's just a breach of contract claim. It's a single claim breach of contract. Okay, so we're back to Judge Barron's question. How much money is involved in this? I think it's $80,000 or $50,000. I mean, it's prejudgment interest on $800,000. Right. So, I mean, it's a very small part of it. You're the one trying to defend it. We are. We are indeed. We are indeed. And, you know, again, the question is, this was part of a post-trial motion, and did Judge Burroughs abuse her discretion or engage in clear error in making a determination that, given that the jury hadn't selected a date, that an appropriate date would be the filing of the case in February 2016, whether this court is more comfortable saying it's September 2016, it's six months. But I think the question is, did Judge Burroughs have? I'm not sure on abuse of discretion review if the beginning of the breach was before the filing of the complaint and wasn't totally effectuated until later. I question whether that's an abuse of discretion. Well, the question isn't did they actually enter the market. It's whether they intended to. They said we are exiting the market. So I think planning work and precatory work to reentering the market might be evidence of the intention to breach or even part of a breach theoretically. I see my time is up. Thank you. Your Honor, just to go back to the colloquy point, if you look in the record at page A5225, the court said to me, so if it's validly terminated, there's no way to breach other than getting back into the business. My answer is it's actually simpler than that, Your Honor. If it's terminated, it ends. That's the end of the exit provision. That's the point. If we validly terminated, the exit provision doesn't continue any longer. No objection from counsel. That was the basis on which the form was agreed to. That's consistent with the form. It's just that it happens the form has a December 18th date. There's no discussion there about December 18th. But separately, that's the colloquy. We were pressing your opponent on whether, which we really should be pressing you, did this argument about there having been a prior agreement about the content of the verdict form, which the jury's verdict reveals to have been a mistaken understanding of what the jury form would be read to mean, was that argument presented in your Rule 50 motion? It was, Your Honor, both 50A and 50B. So what I just read from was an attachment to our 50B motion. So, yes, it was. If I could move on quickly. Is your contention that the district court just not rescinding you having presented that argument, just didn't address it? The judge addressed it, Your Honor, by saying that she thought that the jury found that we did not validly terminate the agreement. In your contention, that's just not responsive to the argument that you think you've made. That's correct, Your Honor. That was error, yes. Do you have authority for the idea that because you were under a misapprehension about what the verdict form meant, that no one ever caught that after a really complicated, long trial in which the jury sits through the whole thing and goes through everything, after all of that, when it's a relatively clear mistake on your part, if that's right, at least in my judgment given the December 18th language being in there, that at that late date you can throw out the verdict because it now occurs to you that you wrote something that was susceptible to interpretation you didn't anticipate? What would be the authority for that? Well, I have to respectfully disagree with your characterization, Your Honor. Don't assume my characterization. Assuming your characterization, it would depend on what the jury did. Now, the problem with what the jury did is they followed the instructions on the form and then illogically awarded it. You're on a different argument now. Now you're about the inconsistency of the verdict. I'm granting that the verdict form is susceptible of interpretation that renders the verdict consistent. You're making a separate argument that once that happens, though, you still can win because that reveals that the verdict form meant something that no one intended it to mean. None of the parties intended it. Can you tell me you made that argument separately? Yes, Your Honor. We made exactly that argument separately. What sorority supports the idea that you can, at that late date, say, oh, we wrote something wrong. Now we can correct it after the verdict? Well, I'm not aware of a case that involves something like this, Your Honor, but I have to disagree with the premise because I think all the parties agreed that we were doing something right. So to answer your question, I do not have a case that says that. I see my time is up. If I may just briefly address two things quickly. One is if we assume that standing doesn't exist and we're talking about a contract, then it is clear that the jury entered a verdict on the licensing agreement that is not supported by any shred of documentary evidence. Mr. Arian testified that the owner of the software was a company called ITXGMBH. There's nothing in the record other than his testimony to support that, and his testimony is directly contradictory to the statement that ITX Technology, another company, is the sole and uncovered owner. And lastly, Your Honor, is on damages, and I'll do this very quickly. Under the PS agreement, the problem with the jury's damages award is ITX Solutions did not continue to perform under the agreement. They didn't issue invoices. They didn't detail who the workers were. They didn't show that their work was actually done. Moreover, when the jury rendered their award, they did not even follow the contract. They did not deduct 541,000 euros per quarter. That ended up being a substantial sum somewhere around three and a half and two million. We're listening to you, but this is not proper rebuttal argument. I understand, Your Honor. Let me conclude, then, with the sort of relief that we're seeking. We ask that the court either dismiss the case on standing or remand for a new trial as a matter of law or on damages. Thank you very much. All right. Thank you both.